21 131;
175 194!

# Delaware & Hudson Canal Company *versus* The Pennsylvania Coal Company.

1. Though the Delaware and Hudson Canal Company is forbidden by its Act of incorporation from charging a higher rate of tolls than is specified in the Act, it was not intended to prevent it from charging *a less rate*.

2. Under the agreement between the parties, the canal company was to permit the use of its canal, and the coal company to pay the amount of tolls agreed upon for its use: *Held*, that the summary remedy for the recovery of toll prescribed by the charter of the canal company was not taken away, as between the contracting parties, by the agreement between them, though the amount of toll, and time of its payment, was modified by it.

3. Though the president and managers of the Pennsylvania Coal Company were, at the time of the agreement between the parties in the case, citizens of New York instead of Pennsylvania, and therefore *ineligible* as officers, yet the agreement is not, on that account, invalid as against the Hudson & Delaware Canal Company. Having by the agreement recognised such persons as officers, *de facto*, and the company for which they were acting having made a large expenditure in pursuance of the agreement, the said officers are to be esteemed as such, as against the opposite contracting party, in a suit at law between them founded on the agreement; especially as the plaintiffs, the canal company, have not offered to return the money received under the agreement, and to put the company in the condition they were in at the time the agreement was made.

4. In addition to the summary remedy referred to, an action of covenant may be maintained on the contract between the parties for the recovery of tolls due under its provisions.

5. The relief to be granted under a general prayer must not only be consistent with the specific relief requested, but must be sustained by the case made by the bill; the allegations relied upon must appear to be introduced into the bill for the purpose of obtaining the relief prayed for, and the facts should also be stated with sufficient precision to enable the Court to make a specific decree.

THIS was a bill in Equity praying for an injunction, and was filed on the part of The President, Managers, and Company of the Delaware and Hudson Canal Company *v.* The Pennsylvania Coal Company. It was filed at Pittsburgh, in the Western District of the Supreme Court, on the 21st October, 1852.

A subpœna was awarded returnable at Philadelphia, on the second Monday (13th) of December next following, at which time the application and motion to be heard. It was further ordered, that the writ of subpœna be directed for service to the sheriff of Wayne county, Pa.

The plaintiffs were a corporation created under the laws of New York, by virtue of a statute of that state, passed on the 23d April, 1823. That Act was amended by other statutes of that state, passed on 7th April, 1824; 19th Nov. 1824; and 20th April, 1825.

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

By an Act of the legislature of Pennsylvania, of 13th March, 1823 (*Acts*, p. 74), Maurice Wurtz, his heirs or assigns, was authorized to improve the navigation of the Lackawaxen. By the Act of 1st April, 1825 (*Acts*, p. 141), it was enacted, That with the consent of Maurice Wurtz, his heirs or assigns, it should be lawful for "The President, Managers, and Company of the Delaware and Hudson· Canal Company" to improve the navigation of the said river in the manner authorized by the said Act of 1823. By a further Act of 9th February, 1826 (*Acts*, p. 25–6), it was provided, that if the Company reduce their locks below a certain standard, then they should not make a slackwater navigation, but in lieu thereof, a canal navigation.

It was alleged in the bill, that by the Acts of Assembly of Pennsylvania, the complainants were authorized to construct a canal within this state from Honesdale to the Delaware river. And by the statutes of New York, they were authorized to construct a canal along and from the Delaware river, in the state of New York, to the Hudson river ; and that they constructed a canal from Honesdale, in Pennsylvania, to the Hudson river. That they were authorized to collect *tolls*, and had established an office at Hawley for that purpose, and had established a code of by-laws and regulations for the conducting of the canal.

The Pennsylvania Coal Company was a corporation existing in pursuance of a statute passed 16th April, 1838, and of various supplements. It was stated, that it had constructed a railroad of forty-seven miles in length, from Hawley, in Wayne county, to Port Griffith, in Luzerne county, the eastern part of the road terminating on the canal of the complainants ; and that it conveys coal on their canal.

Reference was made to an agreement of 31st August, 1847, between the complainants, and *The Wyoming Coal Association*, relative to the transportation of the coal of the said Association on the canal of the complainants. The canal company agreed to furnish facilities of navigation and transportation on their canal, " charging and collecting a *toll* on the *coal* transported in pursuance of this agreement, at a rate per ton of 2240 lbs. to be established as specified therein."

By the terms of the contract of 31st August, 1847, in relation to the mode of fixing the tolls, it was agreed as follows :

On the 1st day of May, in each and every calendar year, the quantity of lump coal of the said Delaware and Hudson Canal Company which shall at that time have been sold to be delivered at Rondout, and to arrive by the said canal during the said calendar year, shall be ascertained, and the average price at which such sales shall have been contracted shall also be ascertained ; and from the average price thus ascertained, Two dollars and fifty cents shall

be subtracted, and one-half of the remainder shall be the toll per ton during such calendar year, except that if any discount or deduction, contingent or otherwise, shall be agreed upon or contemplated in the contracts for such sales, the said toll shall be reduced correspondingly to such discount or deduction as shall be actually made. But provided, nevertheless, that if on the 1st day of May in any calendar year, the quantity of lump coal of said Delaware and Hudson Canal Company, which shall at that time have been sold as aforesaid, shall be less than one-half of the estimated sales for such year, the toll during such year shall be calculated in the manner hereinbefore provided at the average price at which the sales of lump coal for such year shall be actually made; and if in any calendar year no sales of the coal of the Delaware and Hudson Canal Company shall be made, then and in that case the tolls during such year, shall be calculated on the sales for such year of the lump coal sold by the said "The Wyoming Coal Association" for the time being, or its assigns, in the manner hereinbefore provided for calculating the toll on the sales of the said Delaware and Hudson Canal Company.

And in case of an enlargement of said canal, the said President, Managers and Company, and their successors and assigns, may also charge and collect an additional toll on the coal transported in pursuance of this agreement, at a rate per ton of two thousand two hundred and forty pounds, to be established after the completion of the said enlargement in the manner following, &c.

An agreement of 30th November, 1849, was made between the complainants and the *Pennsylvania Coal Company* in relation to the sale of coal, to be produced and delivered at Eddyville, by the Pennsylvania Coal Company. By this agreement the complainants were to receive and sell the coal of the defendants, delivered at Eddyville, commencing with the product of 1850, upon certain terms and conditions specified. The *seventh* item of the agreement was as follows:—" The toll on canal for the coal of the Pennsylvania Coal Company shall be considered payable at Rondout, subject to the agreement with the Wyoming Coal Association of 31st August, 1847."

By the 8th item it was provided that "The Pennsylvania Coal Company shall provide funds to meet the toll and canal freight to be paid on its own coal." The defendants were to pay to the complainants eight cents per ton for coal sold for them by the complainants, which amount, with the rateable proportion of expenses, was to be in full compensation for services in the *sale*, weighing, care, custody, supervision, forwarding, or otherwise of the coal of the defendants.

Another agreement under seal, dated 29th July, 1851, was made between the said canal company and the Pennsylvania Coal Com-

M

pany, in which reference was made to an annexed agreement between the canal company and the *Wyoming Coal Association,* of the 31st August, 1847, in which it was stated that *at the instance and request of the latter,* the Pennsylvania Coal Company had constructed a railroad from the coal lands of the association to the Delaware and Hudson Canal; and that *all the business and interests of the Wyoming Coal Association had been assigned to, and were then vested in, the Pennsylvania Coal Company.* It was agreed that the covenants and stipulations in the said agreements shall be deemed to be, in all respects, the contract of the parties to the present agreement, &c.

In addition to a reference to the said agreements, it was alleged in the bill of complainants, that on the 1st of May previous, viz., 1852, the complainants had not sold, and could not sell, the one-half of the lump coal estimated to arrive at Rondout during the current year; that, in accordance with the articles of agreement, before the said 1st of May, they had charged to the defendants, upon the anthracite coal to be transported on the canal, a toll of fifty cents per ton, which it was alleged was less than, under the agreement, they were entitled to charge, but that the complainants have used the canal, but have refused to pay tolls, except on the coal transported during one day in May; but had denied the right of the complainants, under the provisions of the contract, or by law, to collect any tolls from the defendants for the transportation of their coal.

It was further alleged that the defendants had paid a part of the tolls under protest.

Also; that in order to avoid the agreement, the defendants, on the 19th May, 1852, filed in the Supreme Court of New York a bill in equity, praying, *inter alia,* for a *perpetual* injunction against the complainants from stopping the boats of the coal company for non-payment of tolls, in which proceeding the *provisional* injunction was obtained against detaining any boat of the coal company on account of the non-payment of tolls, until the further order of the Court.

It was averred in the present bill, that the articles of agreement between the parties in the case, ought not to be enforced against the complainants, because, according to the construction put upon them by the defendants, and under which construction the injunction was obtained, they are contrary to the provisions of the statutes, and that the officers who executed the agreement on behalf of the present defendants had no legal power to enter into the agreement. And also because it was uncertain in its terms; that mutuality is wanting, as, whilst the complainants are claimed to be bound, the defendants have not contracted to pay any tolls, and up till the 4th October, 1852, refused to pay the same, and after-

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

wards paid under protest, and seek to obtain from the Court in New York a permanent injunction enjoining permission to navigate the canal *without the payment of tolls.*

It was alleged that because the rights pertaining to the complainants have been denied; because under the agreement the complainants have no remedy by the laws of this state, and can sustain no action against the defendants in law or equity, for recovering toll; because the understanding of the complainants at the time of entering into the articles of agreement was, that they might fix and charge the amount of tolls to be paid by defendants and collect the same; because the complainants were bound by law to make dividends; and also were bound to pay to the treasury of Pennsylvania the amount of state tax chargeable by law, and if the construction alleged by the defendants be put upon the contract, the payment of the tax to this Commonwealth may be defeated; and it being further alleged that by the Act of 13th March, 1847, it was required that a majority of the managers should be citizens of Pennsylvania, and that the president and a majority of the managers of the Pennsylvania Coal Company were residents of New York and not citizens of Pennsylvania, and had no legal power to enter into the said articles of agreement, and that the said company, from the 1st of May till the 4th October, 1852, have continued to navigate the canal, under pretence of the provisional injunction, and declare their intention to do the same without payment of tolls, it was asked that answers be filed to the matters alleged, and that a subpœna issue commanding the appearance of the defendants, and that a decree be made that the defendants deliver up the articles of agreement *to be cancelled,* and that the defendants be restrained by injunction from commencing and prosecuting any action at law against the complainants touching any of the matters aforesaid. Also, that the defendants be restrained from using the canal, without obtaining for their boats permits and clearances and first paying the tolls according to law; and that such other relief be granted as may seem to be proper.

A demurrer to the bill was filed on the ground that the complainant had not submitted such a case as entitled it to any discovery or to the relief prayed for: Further, that it did not appear in the bill that the complainant has not a complete remedy at law; but that if the allegations stated were true, the complainants had a full remedy at law; further, that the questions arising in the case as to the respective rights and obligations of the parties, are involved in the proceeding pending in the Supreme Court of *New York,* and that it did not appear that that Court had not jurisdiction in the matter; and that if all the allegations in the bill were true, no title to the equitable relief prayed for arose.

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

And for further cause of demurrer to the said bill, it was alleged on the part of defendant:

*First:* That it does not appear, and is not stated in the bill, at what rate the complainant, during the period referred to in the said bill, was entitled to charge tolls under the provisions of the articles of agreement therein recited; nor are the facts from which alone the said rate can be calculated in the manner provided in the said articles of agreement, stated in the said bill, although these facts are in the exclusive knowledge of the complainant.

*Secondly.* That while it does not appear in the bill that the complainant has charged, or demanded, or claimed to have been entitled to receive more than *fifty* cents per ton on the coal transported by the defendant, during the season of 1852, it is stated in the said bill that the defendant transported before the 3d day of October of that year, two hundred and eighty thousand tons of coal, and upwards, and paid "on account of tolls" thereon, $160,000; and that since the 4th of said October, has paid at the rate of sixty-four cents on each and every ton by it transported; whereby it appears, on the complainant's own showing, that the said complainant has received more tolls on the said coal than it is stated in the said bill to have charged, demanded, or claimed to have been entitled to receive.

And for further cause of demurrer to so much and such parts of the said bill as allege that the articles of agreement therein recited ought not to be enforced, because the said articles, under the construction put on them by the defendant, are contrary to the provisions of the statutes recited, subversive of the rights of the stockholders of the complainant, and beyond the power, under the said statutes, of the officers who executed them on the part of complainant, to bind the complainant thereby, and are so uncertain that the rights of the parties cannot be ascertained under them; and are without mutuality between the parties thereto, and are in their operation contrary to the understanding of the complainant at the time of entering into them; the defendant shows,

*First.* That all the said allegations are hypothetical and not positive, and that the complainant, in other parts of the said bill, expressly repudiates and denies the truth of the hypothesis on which the said allegations are by itself made to depend.

*Secondly.* That it is not shown in the said bill that the construction of the articles of agreement therein recited, which is alleged by the complainant as the ground for invalidating the said articles of agreement, renders the said articles of agreement contrary to the said statute, or so uncertain that the rights of the parties thereto cannot be ascertained, or without mutuality.

*Thirdly.* That the said allegation as respects the uncertainty of the said contract, if well founded, has no relation to the specific

relief prayed for in the said bill, or to any relief which can be granted in this action.

*Fourthly.* That the said allegation, as respects the want of mutuality of the said contract, is unfounded and indefinite, and has no relation to the specific relief prayed for in the said bill, or any relief which can be granted in this action.

*Fifthly.* That all the said allegations are immaterial and irrelevant, and are too indefinite for an answer thereto to be required; and do not, on the complainants' own showing, entitle it to the equitable relief prayed for in the said bill, or to any equitable relief.

And for further cause of demurrer to so much and such parts of the said bill, as seek to avoid and annul the articles of agreement recited in the said bill, on the allegation that a certain Act of the legislature of the state of Pennsylvania, entitled "An Act in relation to certain corporations," passed the 13th day of May, 1847, applies to the defendant, shows,

*First.* That it does not appear by the Acts relating to the defendant, referred to in the said bill, that the said company is a Railroad Company, within the meaning of the said Act of May 13th, 1847, *but the contrary appears:*

*Secondly.* That if the said Act did apply to the said company, and its directors were none of them residents of the state of Pennsylvania, the election of the said directors would be void only as *against the state of Pennsylvania*, and the invalidity of such election, as against the said state, cannot be taken advantage of by the complainant in this action, or by any other party than the state, or by any party collaterally.

*Thirdly.* That if the said election of directors were void generally, the said articles of agreement would not thereby be rendered invalid, but would still be binding upon the parties thereto.

*Fourthly.* That if the said articles of agreement were void, the complainant would have a full and complete remedy in respect thereto at law, and no facts are shown in the said bill to bring the case within the class to which alone the equitable relief prayed for, or any equitable relief, is applicable.

*Fifthly.* That if the said Act did apply to the defendant and did operate to invalidate the said articles of agreement, a Court of Equity would not interfere to enforce a penalty in the nature of a temporary forfeiture of the corporate franchises of the defendant; and still less to extend the effects of that forfeiture, beyond the objects and policy of that Act, to the annulling of a private contract made in the course of the legitimate business of the defendant.

*Sixthly.* Nor if the said Act did so apply and operate, would a Court of Equity permit the complainant under the state of facts

admitted and stated in the said bill, to set up the invalidity of the articles of agreement, even as a matter of defence; and still less would it interfere affirmatively in the manner prayed for in the said bill.

*Seventhly*. That the aforesaid parts of the said bill, and the allegations therein expressed, are wholly immaterial and irrelevant; and if the said allegations were in all respects well founded, there is no relation between them and the relief prayed for in the said bill, nor does any title in the complainant to such relief or to any equitable relief result therefrom.

And for further cause of demurrer to the remaining allegations of the said bill, the defendant shows that they are wholly immaterial and irrelevant, and that no title in the complainant to the equitable relief prayed for, or any equitable relief, results therefrom.

And the defendant further shows that the said bill is in many other respects insufficient, irrelevant, and without equity; and is, as between its several parts, multifarious, inconsistent, and irreconcilable.

*Mallery* and *Meredith*, for the Pennsylvania Coal Company.

The plaintiff is a corporation, chartered by the state of New York, and is proprietor of the Delaware and Hudson Canal, which extends from the Hudson river at Rondout, to and across the Delaware river to Honesdale, Pa., a distance of 108 miles. It also owns a railroad connecting with the canal at Honesdale, and also coal mines, and is engaged in the business of mining coal and transporting it to market by the railroad and canal. The capacity of the canal exceeding that of the railroad, and contemplating a further enlargement of the canal, the company sought to induce another company to construct another railroad connecting with the canal, and to furnish coal for the railroad to transport to the canal.

Authorized to impose a toll " at such rates as the managers shall think proper," not exceeding eight cents per mile for each ton of coal transported, the board, on 28th April, 1847, in adopting a resolution with the declared object of creating motive and inducement to capitalists to invest their funds in the construction of a railroad, offered " to the acceptance of any who might avail themselves of the same, a *permanent* tariff of tolls on all coal entering the said canal by any such railroad." The Wyoming Coal Association (unincorporated) entered into a written contract with the plaintiffs. By this contract a *reduced rate*, it was said, of tolls was established, and a mode prescribed by which, from time to time, it was to be ascertained; and it was provided that if, at any time hereafter, the business of the said " The Wyoming Coal Association" should be

vested in, or transferred to, any corporation, the provisions of the contract should be applied in favor of such corporation, and the contract renewed or re-executed to such corporation.

On the 30th day of May, 1851, that contract was formally assigned to the defendant by the Wyoming Coal Association. On the 29th day of July, 1851, the plaintiff formally ratified such assignment, and entered into an indenture to and with the defendant, to keep and perform towards the defendant, all the covenants and stipulations of the said contract.

That contract established a mode of determining, for each year, the tolls on all coal transported under its provisions and entering the canal by way of defendant's railroad. It was by applying a simple and fixed formula, therein prescribed, to the average price at which the sales of lump coal of the plaintiff should be made. If not less than one-half of the sales estimated for the year were made before the 1st day of May (which may be assumed to be before the commencement of the deliveries), the calculation was to be on the average price at which the sales so made were *contracted*. If less than one-half, the calculation was to be " on the average price at which the whole sales for the year shall be *actually* made." The formula was, to deduct from the average price, when ascertained, two dollars and fifty cents, and take one-half of the remainder as the rate of tolls for the year.

On the 3d of May, 1852, the plaintiff notified the defendant, that its total sales of lump coal contracted up to May 1st, to arrive by the canal during that year, were sixteen thousand two hundred and fifty tons only; that its expected sales for the year were five hundred and forty thousand tons; and that the sales contracted being less than one-half the sales estimated for the year, the toll during the year was to be calculated on the average price at which the sales for the year should be actually made. The plaintiff therefore proposed to take tolls at the rate of fifty-five cents per ton; but added, " As, however, the rate of tolls for the season must depend on the average rate of sales of lump coal for the year by this company, *which cannot be certainly known until the close*, the above proposed rate of toll must necessarily be regarded as a proximate estimate, and payments under it will be received as payments on account." The plaintiff afterwards proposed to take fifty cents. The defendant expressed its willingness to pay on account at as high a rate as was reasonably certain to be found payable when the true rate could be ascertained; but alleged that the rule proposed for estimating the toll, would generally result in over-payments, and would produce a higher rate than was reasonable; and, therefore, offered to pay at the rate of forty-five cents, subject to variation, as the market might change.

While these negotiations existed, the plaintiff attempted sum-

marily to enforce the adoption of its own "proximate estimate," as the rule for the "payments on account," by stopping the boats of the defendant actually engaged in transporting the coal of the defendant. At this time the plaintiff had in its possession, as agent for the defendant, under another contract, coal belonging to the defendant, valued at not less than fifty thousand dollars, and available assets from sales, estimated at not less than two hundred thousand dollars, both of which were expected to be realized much faster than the current tolls could in any event possibly accrue.

In order to prevent the detention of the boats, the defendant, the Pennsylvania Coal Company, filed a bill in equity against the Delaware and Hudson Canal Company, in the Supreme Court of the state of New York, praying an injunction restraining the said company during the then current season of canal navigation, from excluding the boats of the defendant from navigating the canal, and also a temporary injunction pending the litigation. The temporary injunction was granted on the 20th of May, 1852. Subsequently the defendant filed a supplemental bill in the same action, praying for damages for the injury sustained by reason of the actual detention of its boats. The temporary injunction was dissolved on or about the 3d day of October, 1852.

The defendant had repeated and continued by its bill, the offer to pay at what it deemed to be a reasonable estimate of the probable rate which would be found payable: and on the 11th of October, 1852, it paid one hundred and sixty thousand dollars on account of tolls on the two hundred and eighty thousand tons transported before the 3d of said October, or fifty-seven and one-seventh cents per ton. And from and after the 3d day of said October, the defendant paid, under protest, "sixty-four cents per ton, on each ton" which it transported.

In this state of facts, the plaintiff filed the bill in this case, praying,

*First.* That the defendant be decreed to deliver up the said contract, or articles of agreement, to the plaintiff to be cancelled.

*Second.* That the defendant be restrained by an order and injunction of this court, from commencing and prosecuting any action at law against the plaintiff, touching any of the matters in the bill.

*Third.* That the defendant, its officers, agents, and servants be restrained by injunction from navigating the said canal, without obtaining for the boats used by them the necessary permits and clearances, and without first paying tolls according to law.

To the said bill the defendant demurred.

In support of the demurrer, it was alleged, that the bill showed *no existing injury* for which redress was sought. 2. That the complainants had a complete remedy at law.

1. If the construction of the contract insisted upon by the com-

[Delaware & Hudson Canal Co. v. Pennsylvania Coal Co.]

plainant be correct, the complainants have the right to collect the toll on each boat load.    2. If the construction contended for by defendants be adopted, the complainants still have a remedy at law for the collection of tolls.    That construction is, that in a contingency rarely happening, but which did occur in 1852, the clause of the contract applying on that contingency, would operate as an agreement to postpone the payment of tolls till the close of navigation, and an agreement to pay the tolls when that period elapsed. The construction that this provision operates as an agreement to *postpone* but not to *pay*, has not been set up.    The defendant admits that there was an agreement to pay.    The contract entered into with the Wyoming Coal Association and transferred to and ratified by the respondents, furnishes an action of covenant against either party for a breach of it.    The complainants have a right to charge and collect tolls to be ascertained in the mode stated in the contract.    That to constitute a covenant the law does not require technical words; wherever the intent of the parties to that effect can be collected from the deed, covenant is maintainable: *Platt on Cov.* 28, 30, 3 *Law Lib.*; 2 *Rawle* 18; 17 *E. C. L.* 29; 14 *Peters* 13; 4 *Wheaton* 228.

The managers had authority to make the contract: 12 *Sec. of the Act of Incorporation;* also reference to 3 *Watts* 126; 2 *Harris* 162; 1 *Pick.* 304.    If the contract, on its face, is void, a court of law can afford sufficient redress; and if the invalidity of it appear on its face, a court of equity will not direct it to be cancelled: 2 *Story's Eq.* § 700; 36 *Law Lib.* 28.    A court of equity will not rescind a contract unless it can put the parties in *statu quo:* 1 *Smedes & Marshall*, 126; 3 *Bibb* 52.

In the bill filed in New York, the contracts referred to in the present bill were the subject of inquiry, and their construction can be decided therein: 3 *Hare* 100.    It was competent for the Pennsylvania Coal Company, though chartered in Pennsylvania, to sue or file a bill in New York: 4 *John Ch.* 374; 13 *Peters* 588; 1 *Parsons* 147; *Id.* 226; 6 *Whar.* 392; 2 *Story* 743; 2 *W. & Ser.* 208; *Id.* 214; 3 *W. & Ser.* 399; 2 *Id.* 133; 3 *Hare* 100.

The object of this bill is not to procure a construction of the contract; but it is asked that the Court take jurisdiction to destroy the contract, and that, too, whilst another proceeding in equity is pending in a court of competent jurisdiction for the purpose of determining its construction and the rights of the parties.

*Reeder* and *W. H. Dimmick*, with whom was *Jessup*, for the complainants.—By the provisions of the contract the right is recognised to collect toll at the offices on the canal; no other place is mentioned, no time for payment fixed.    There is no promise or agreement on the part of the defendants *to pay*, and therefore no action of cove-

nant could be maintained on the articles.    No action on the case for use and occupation of the canal was maintainable : 2 *Pa. Rep.* 462; 3 *Watts* 126.

It was contended that the complainants have the right to charge a toll upon the coal of defendants transported upon the canal; that they have a right to enforce the collection of such toll on each cargo as it enters the canal.    And, thirdly, that it was contemplated by the parties, when entering into the contract, that the defendants should have the benefit of any depression in the market during the year, and that the complainants are bound to render to defendants an account of sales, and to refund any excess they may have received beyond the proper amount, at the expiration of the year, with interest.

It was contended, that the articles of agreement were void, 1. For want of power in the Board of Managers of the Delaware and Hudson Canal Company to bind the corporation by such articles.    2. For the want of mutuality therein.    3. For the uncertainty in the material and essential parts of the contract.

1. The right to collect tolls in the manner provided for in the Act, is an important franchise.    The officers had no right to yield it : 2 *John. Rep.* 114; 5 *Barb. Sup. Ct. Rep.* 649; 5 *Denio* 567.

2. There was no mutuality.    The defendants having denied all right to collect tolls, admitted that they had refused to pay, and procured an injunction to prevent their collection, cannot fairly contend that any mutual benefit accrues to the complainants under the contract, or that it is such a contract as ought to be enforced.

3. The contract is too uncertain to be sustained.    1. There is no time or place fixed in it for payment of tolls.    2. A credit for a time undefined is established.    3. The amount of toll will rest upon the construction of several contracts upon which there may be litigation : 2 *Story Eq.* § 700.

The complainants allege that they have no remedy at law; that the only legal mode of collecting toll was at the offices on the canal.

It was contended that the courts in New York have no jurisdiction over the defendants : 13 *Peters* 588; 1 *Parsons* 547.    There is no *comity* which calls upon this Court to defer to the Courts in New York in this matter.

That the Court have power to order instruments to be delivered up to be cancelled, reference was made to 1 *John Ch.* 520; 3 *Russ.* 434; 2 *Mitford's Pleading* 121; 1 *Hayw.* 226.

*As to the demurrer.*    The remedy at law should be ample, adequate, and certain : 5 *John Ch.* 101; 6 *Pick.* 376; 16 *Id.* 525; 1 *Parsons* 541; 22 *Vermont* 242.

The payments of toll were made *under protest,* and cannot properly be set up to defeat the complainants.    In the demurrer

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

it is admitted that under the terms of the contract the amount of toll cannot now be precisely determined. It was alleged that there was no essential fact omitted in the bill, and the necessary inferences from the facts necessary to show that the complainants are entitled to relief are set forth in it.

It was, in a subsequent reply, stated that it was not denied that the Pennsylvania Coal Company *might sue* in New York, but they could not *be sued* there. There is no statute which domesticates them in New York. No bill could be filed against them in New York. A decision upon the bill would not have decided anything conclusive as to the rights and duties of the complainants in the management of their canal in Pennsylvania. An injunction not to take tolls *in Pennsylvania* would have been nugatory. But, it was alleged, that in the present case both the parties and the thing are subject to the jurisdiction of this Court. That in the bill in New York, only an injunction is asked; but that it is not sought therein to raise the material questions in dispute between the parties, so as to have a legally binding construction given to the articles of agreement.

Further suggestions and arguments on the part *of the defendants* were made, viz : That if the *defendants* never paid any tolls, the Commonwealth would receive the same amount it would receive without the operation of the contract.

That the position taken by the plaintiffs that the defendants deny the right to collect tolls, and the liability of the defendants to pay tolls, was without foundation. The contrary is the case. The dispute was whether the plaintiffs could charge and collect tolls at the rate of fifty-five cents or fifty cents per ton, before they could be ascertained by the terms of the contract. The defendants offered to pay forty-five cents per ton, and the balance when the exact amount of tolls could be ascertained.

The complainant is incorporated by the state of New York. It is not a corporation of Pennsylvania. It acts under a license from Pennsylvania to do certain acts, and can act only to the extent of that license. It can sustain a suit in this state only, upon the principle of *comity*, which is extended to foreign corporations.

The privilege of collecting tolls before using the canal, cannot deprive the plaintiffs of the common law remedy of making contracts for securing the payment of tolls; and a departure from the mode of collecting toll prescribed by the charter, is no surrender of the franchise. Also, if the plaintiffs have made an agreement relative to toll, and have induced the defendants to expend a large amount of money upon the faith of the contract, the contract is not to be disregarded or vacated, upon the ground of departure from the remedy allowed by the statute. The defendants do not object that the tolls should be collected in the

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

mode prescribed by the statute, *as soon as they are ascertained in the manner the plaintiffs have agreed to.*

As to the matter of jurisdiction : The greater part of the canal of the plaintiffs is in New York, where the plaintiffs belong, and it is not shown how this Court has jurisdiction over a New York company, and with respect to the management of a canal located in New York. The plaintiff claims to exercise its New York franchises in Pennsylvania, over its New York canal. It claims to exercise in Pennsylvania its authority derived from New York, and to collect in Pennsylvania the toll on the whole length of the canal in New York, requiring payment at the office at Hawley, *in Pennsylvania,* of toll *upon the whole canal* in both states. The tenure given to the plaintiffs by Pennsylvania, gives no authority to collect tolls in *New York ;* nor does the charter obtained in New York give the right *to collect the toll on the New York canal at an office in Pennsylvania.* And it was for relief against the claim of payment *in Pennsylvania* for navigation on the canal in *New York* that relief was asked by the bill filed in New York; and as to the portion of the canal in that state, which is the greater portion of it, the New York Court had jurisdiction. Having jurisdiction over the parties and the subject-matter, ample justice can be there done, and the decision of that Court will be *conclusive.* In that proceeding the present complainants could have been heard on the objection that there was no valid contract between the parties. If the articles of agreement are given up and *cancelled,* no action by the defendants can be sustained upon them ; and the third prayer of the complainants is, that the defendants be restrained from navigating the canal "without first paying the tolls according to law," which is claimed to be any sum on the canal in New York not exceeding eight cents per mile. That is the franchise claimed by the complainants, and which it has been contended on their part, they cannot part with.

The opinion of the Court was delivered, April 4, 1853, by

LEWIS, J.—The special prayer for relief in this bill is, that certain articles of agreement between the parties, dated 29th day of July, 1851, be delivered up to be cancelled; and that the defendant be restrained from bringing any action upon them, or using or navigating the canal under them. We proceed at once to consider and dispose of the reasons urged in favor of the relief thus specially desired.

It does not appear that the defendant, in its proceedings before the Supreme Court of New York, obtained an injunction under a construction of the agreement, which is "entirely contrary to the provisions of the statutes, and subversive of the rights" of the plaintiff. Nor do we see anything in the agreement to justify any such

construction. It is true, that a temporary injunction was obtained from the Supreme Court of New York, by which the *canal* company was restrained from obstructing the *coal* company in navigating the canal, and from withholding the usual facilities in regard to the same. But this injunction has been dissolved, and we are bound to believe that the bill will be disposed of on the final hearing, according to the principles of equity and law. The tribunal having cognisance of it is quite as competent to do justice as the one whose authority is now invoked. We have seen nothing in its past proceedings to create a doubt in regard to the justice of its final action in the premises. It is clear, that a valid agreement cannot be rendered invalid by a temporary error of a court, or of one of the parties in expounding it.

It may be that the agreement in question might prevent the canal company from enforcing the maximum rate of tolls allowed by its charter, if it was so disposed; and might also prevent said company from dividing the profits arising from it before they are collected. The charter prohibits the company from charging a higher rate than that specified; but it was not intended to prevent the canal company from charging a less rate: on the contrary, the lower the rate of tolls, the better for the advancement of the public interest; and we see nothing to indicate that these corporations stand in need of legislative or judicial action to restrain either from neglecting or disregarding its own interest.

The agreement is alleged to be uncertain, and without mutuality in its obligations. There may be some difficulty in the construction of it; but, so far as we perceive, it is quite susceptible of a construction by which the amount of toll per ton, as well as the time of payment, can be reduced to reasonable certainty. There is no want of mutuality in the provisions for enforcing performance. The canal company is bound by the agreement to furnish the use of its canal to the coal company, and the latter is required to pay the tolls according to the rule prescribed by the parties for the purpose of ascertaining the amount. The remedy for the collection of tolls under the charter is not taken away by the agreement, although the rights are modified in regard to amount and time of payment. This summary remedy for the collection of tolls, from the nature of the parties, the magnitude of the interests involved, and the irreparable public and private injury which might accrue from its abuse, must necessarily be subject to the control of the courts in the exercise of their chancery powers. In addition to the summary remedy referred to, we are of opinion that an action of covenant may be maintained on the contract to recover any tolls which may become due under its provisions. The fair construction of the agreement is, that there is a covenant to pay the tolls, ac-

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

cording to the measure prescribed by the parties for ascertaining the amount.

Conceding that the president and managers of the Pennsylvania Coal Company, at the time of entering into the contract, were resident citizens of New York, and not residents or citizens of Pennsylvania, and that they were therefore ineligible, it does not follow that the agreement is not binding upon the defendant. The officers may have been ineligible, but this cannot be taken advantage of in this collateral proceeding. It is sufficient for the plaintiff, and all third persons, that they have dealt in good faith with the officers *de facto*. If this were not the case, the acts of the parties, under the agreement, amount to such evidence of ratification as to preclude a Court of Equity from lending its extraordinary aid to destroy the contract, or to prevent the parties from acting under it, or submitting the questions connected with it to the decision of a Court of law.

After inducing the defendant to expend a very large sum of money in the construction of its railroad, and in the other necessary business of mining and transporting coal to market, upon the faith of the agreement in question, the plaintiff is not entitled to have it cancelled upon the grounds alleged against it. If the application had been accompanied with an offer to return the benefits received under the agreement, and to put the opposite party in the condition it was in before the contract was made, we might have viewed it with more favor. As the case stands, there is no equity whatever in the plaintiff's bill, so far as regards the specific relief demanded.

It remains to inquire whether any other relief can be granted under the general prayer. The relief to be granted under this prayer must not only be consistent with the specific relief demanded, but must be sustained by the case made by the bill; and the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must appear to have been introduced into the bill for the purpose, and not for the purpose of corroborating the plaintiff's right to the specific relief prayed; otherwise the Court would take the defendant by surprise, which is contrary to its principles. The facts should also be stated with sufficient precision to enable the Court to make a specific decree, and not in such general terms as to enable the Court merely to decide an abstract principle. In all these particulars the bill is deficient. The facts are not stated with sufficient precision to enable the Court to enter any decree under the general prayer. The precise amount of toll demanded for the period stated in the bill is not specified, nor are any facts alleged from which the proper amount can be calculated, according to the terms of the contract; and the allegations which are made appear to have been set

[Delaware & Hudson Canal Co. *v.* Pennsylvania Coal Co.]

forth merely for the purpose of supporting the specific prayer in the bill. A specific performance of an agreement is altogether inconsistent with an application to have it delivered up to be cancelled as null and void. The bill must therefore be dismissed.

It is ordered and decreed, that the bill be dismissed at the costs of the plaintiff.