## McFarland *v.* Heverly, Appellant.

*Equity—Equity pleading—Amendment—Decree—Evidence.*

1. The relief afforded by a decree in equity must conform to the case as made out by the pleadings as well as to the proofs. Every fact essential to entitle a plaintiff to the relief which he seeks must be averred in his bill. Neither implied allegations nor proof of matter not alleged, can be made a basis for equitable relief. Neither allegations without proof nor proof without allegations, nor allegations and proof which do not substantially correspond will entitle complainant to relief unless the defect be remedied by amendment.

2. Where the prayers of a bill in equity are amended so as to allow additional prayers, but there is nothing in the bill to support the additional prayers, the relief covered by the additional prayers cannot be granted.

3. Where a bill in equity avers that the defendant had taken title by deed for two acres of land, and that he had taken down a fence inclosing a burial ground included within the two acres, and has despoiled the burial ground, and prevented the plaintiff and others who had rights therein to access thereto, and the limits of the burial ground are described by courses and distances, the court cannot make a decree restraining the defendant from the occupation and use of the whole tract of two acres, and directing him to pay damages for the destruction of a grove of trees within the two acres outside of the limits of the burial ground, although the original prayers are amended so that such a decree might conform to them, if the original bill contains no averments to support the additional prayers, and the bill itself is not amended.

Argued Oct. 26, 1910.   Appeal, No. 195, Oct. T., 1910, by defendant, from decree of C. P. Clearfield Co., Sept. T., 1910, No. 3, awarding injunction in case of J. F. McFarland et al. v. Charles M. Heverly.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Decree affirmed and modified.

Bill in equity for an injunction.

SMITH, P. J., filed an opinion which was in part as follows:

The principal question on which this case turns is the force and effect of the deed of August 16, 1844, from Hardman Philips to Edward N. Tipton, Jesse Hoover and Benjamin Hartman, Jr., trustees, etc.   The grantees in that deed are described as "the trustees of the Baptist Meeting House lot and buildings of Beccaria Township, in the County of Clearfield, in Pennsylvania, farmers."   The deed is undoubtedly a fee simple deed.   The consideration is nominal.   The habendum is to them and their successors and executors.   Nowhere in the deed are the cestuis que trust named.   Neither are the uses and purposes for which the property is vested in these three men, as trustees, named.   Clearly, therefore, the uses and purposes for which the conveyance was made to them as trustees were the uses and purposes which existed prior to this deed.   These uses and purposes are clearly shown by

the evidence, namely, first, the religious uses of the Baptist congregation at that place, now Utahville, and, second, the burial uses of that community. That it had been thus dedicated prior to the making of this deed is clearly shown by all the facts and circumstances in evidence. First, a church had been built on that property for at least twenty-two years. Second, burials had taken place, of people regardless of religious affiliations, for many years prior to that date. Third, the nominal consideration of the deed is indicative of the intent of the grantor. Fourth, the absence of any declaration of uses, although the deed is to three men as trustees of a certain church and a particular denomination, indicates that there were other uses than the uses of that particular congregation. Fifth, the amount of land deeded to these men was greatly in excess of that which was needed for church purposes alone. Sixth, the continued use after the deed, openly, notoriously and continuously, without any objection on the part of the congregation, by people in that vicinity of all denominations and faiths, as a burial ground, indicates that they were doing so under some claim of right, presumably dedication by the former owner for that purpose. Seventh, it was the only burial ground in that vicinity. Eighth, the absence of any evidence to indicate that the congregation assumed the control and regulation of this graveyard until a very recent date, is strong evidence going to show that people were burying there under a claim of right and by virtue of a dedication of the former owner. For these reasons we think it is conclusively established that there was a dedication of this ground for burial purposes long prior to the deed and that the absence of any designation of the uses in the deed itself was probably for that reason. It follows, then, that the deed itself conveyed only the naked legal title, subject to the former uses to which the land had been devoted.

A dedication may be by parole and may be without a conveyance of any kind. 6 Cyc. 714. It seems to us equally clear that the abandonment of the lot for religious

or church purposes left the whole tract subject to the burial uses of the community: Gumbert's App., 110 Pa. 496. Even though the whole two acres, by reason of the abandonment for religious uses, cannot now be used by the community as a burial ground, it does not follow under the testimony in this case that the defendant had any right there. The grantees in the deed of 1844, were trustees of a particular house, lot and building in Beccarria township. The religious uses were of course of the Baptist faith, but it does not follow that their congregation five miles away are the legitimate successors of a congregation which has dwindled away and become nonexistent. The testimony clearly shows the abandonment of this church site by the Baptist people long years ago. The congregation at Cambria Mills and Mountaindale are in a separate and distinct community, five miles from Utahville, and in fact in another county. They call themselves the Mountaindale Baptist Church or Congregation. No person having any interest in the maintenance of the cemetery at Utahville nor in the maintenance of a church there on this ground had any voice in the election of the trustees who attempted to convey the property in 1907. The minutes and testimony do not carry out the theory that even the name of Mount Pleasant Baptist Association is maintained at Mountaindale or Cambria Mills. The certificates of burial issued from 1895 to 1906, show that they were granted under the rules and regulations of the "Trustees of the Baptist Church at Mountaindale, Penna." The attempt by the Mountaindale congregation, through its trustees, to sell the two acres of ground at Utahville, on the theory that it (the Mountaindale church) had the title and that the trustees of the Mountaindale church were the legal successors of the trustees named in the deed, must fail for an additional reason. If we are right in our conclusion that the grant in fee, vested by the deed of 1844, was affected with a trust for religious and burial uses, then no sale could be made without a petition to the court and notice to the parties affected, under the provisions of the

Price Act of April 18, 1853, P. L. 503. It follows, therefore, that Heverly got no title.

We believe with Judge WOODWARD, as expressed in Brown v. Lutheran Church, 23 Pa. 495, 500, in which he says: "The sentiment is sound and has the sanction of mankind in all ages which regards the resting place of the dead as hallowed ground—not subject to the laws of ordinary property nor liable to be devoted to common uses." Burial uses are permanent in character and where ground has been used for the interment of a body, it is forever appropriated to that body: Brendle v. German Reformed Congregation, 33 Pa. 415, 422. Mr. Justice SHARSWOOD, in Yard's App., 64 Pa. 95, 98, quotes with approval Lewis on Perpetuities, 689, to the effect that "land dedicated to the service of charity and religion are practically inalienable." How much more so then must be land dedicated to burial purposes, the use of which must necessarily be permanent in character and the disturbance of which is regarded as desecration. The attempt to sell on the part of the Mountaindale church trustees was a conversion from the uses to which the lot had been dedicated and could never have received the sanction of a court under the Price act. The motives which actuated the Mountaindale church, as well as those which actuated the purchaser, are not to be commended and should not receive the sanction of any court. They were purely mercenary on the part of the church and were violative of the clearly vested rights of the plaintiffs and many others having their dead buried therein. We are clear, therefore, that Heverly got no title and had no rights exclusive or superior to that of any of the plaintiffs. His actions after assuming control indicate a mercenary character hard to understand. He certainly knew that scores of his neighbors were interested therein equally with him. He certainly knew that they had raised considerable money and had only recently spent that money in the adornment and proper maintenance of the cemetery. His assumption of the right to close the road, which had been opened and used by the public as

a public road long before he was born, and his assumption of the right at his own sweet will to cut down an ancient oak tree, regarded by his neighbors as a thing of beauty and adornment, and a landmark, invaluable—as some of them testified, are evidences of the mercenary spirit which actuated the defendant. His cutting down of the groves of trees and converting the same into money for his own use; his attempt to sell burial lots therein to his neighbors, are all indicative of a mercenary spirit certainly not in keeping with the spirit of the age with respect to burial grounds. In Pennsylvania cemetery companies are only incorporated as of the first class, that is, those not for profit. The legislature of 1909 passed an act of assembly requiring cemetery companies to set aside a certain portion of the funds received from sale of lots for the purpose of the future maintenance of the cemetery as a thing of beauty. It is doubtful if the law would recognize the right of an individual to create a cemetery and to sell lots for burial purposes. Whether an individual can or not, however, is immaterial to the question at issue, as we look at this case. His conduct as a whole was sufficiently aggressive against and subversive of vested rights to warrant his neighbors, thirty in number, in coming into court to stay his hand.

In accordance with these findings and this opinion, it is hereby directed that a decree nisi be entered by the prothonotary:

1. To the effect that the deed to Charles M. Heverly dated June 10, 1907, from John Gwin et al., trustees, be declared void.

2. That the road or highway through the said two acres be declared a public highway over which the public have full right to pass and repass without interference or restraint by the said Charles M. Heverly, and enjoining the said Charles M. Heverly from closing and obstructing the same.

3. Enjoining and restraining Charles M. Heverly, his agents and employees, from interfering with the free use by the public of the burial ground.

440　　McFARLAND *v.* HEVERLY, Appellant.

Opinion of Court below—Opinion of the Court.　[46 Pa. Superior Ct.

4. That the said Charles M. Heverly shall pay to such person, trustees or corporation, as may be hereafter named, the sum of $300, as damages for injuries sustained, to be expended for the purpose of ornamenting and restoring the said cemetery to its former condition.

5. That Charles M. Heverly pay the costs of this proceeding.

*Error assigned* was the decree entered in accordance with the above opinion.

*Harry Boulton,* with him *Cyrus Gordon,* for appellant.— According to equity rules and practice no prayers for relief or decree can be sustained unless a foundation for the same is laid in the bill itself. Pleadings whether at law or in equity setting up claim and defense are still necessary: Passyunk Bldg. Assn.'s App., 83 Pa. 441; Garner's App., 1 Walker (Pa.), 438; Long's App., 92 Pa. 171; Barclay's App., 93 Pa. 50; Washburn's App., 105 Pa. 480.

Neither the bill nor the amended prayers for relief make any claim for assessment of damages for cutting down of a grove of trees standing outside of the inclosed one acre. Yet the decree assesses the defendant with $100 on this account or item.

It is no answer to say that the defendant was offered an opportunity to present testimony as to the matter of the amended prayers. He is entitled to have the matter put in issue, or issue tendered him, upon a formal and adequate allegation of the facts, and thereupon the right to answer or demur, and this right is a substantial one, involving in this case a deprivation of his right to have a trial on the law side of the court before a jury of twelve men: Supreme Court Rules in Equity, No. 52.

*S. V. Wilson,* with him *Singleton Bell* and *H. B. Hartswick,* for appellees.

OPINION BY RICE, P. J., April 17, 1911:

One of the questions raised in this appeal is whether the

decree went beyond the scope of the bill. A proper understanding of the question and our decision requires a somewhat detailed statement of the allegations and prayers of the bill and a reference to the principal features of the decree.

According to the averments of the bill the matters in respect of which the plaintiffs claimed equitable relief were: first, that part of a two acre tract embraced in a deed from Hardman Phillips to the trustees of the Baptist Meetinghouse of Baccaria, which part was inclosed by a fence and used as a burial ground, the metes and bounds of which were precisely set forth as follows: "Commencing at a point along the township road leading from Glasgow to Coalport; thence south along Thomas Fleck heirs property 230 feet to post and land of heirs of Thomas Fleck; thence west along land of heirs of Thomas Fleck 225 feet to post and another portion of two acres hereinbefore described; thence along said remaining portion of said two acres north 190 feet to post on township road; thence along township road east 227 feet and eight inches to place of beginning;" second, a public road running through the two acre lot, which, it was alleged, had been in existence for about eighty years, and was used by the public for access to the burial ground; third, a deed dated June 10, 1907, to the defendant from John Gwin and others, claiming to act as trustees of the Baptist Meetinghouse of Baccaria, for the two acre tract embraced in the deed from Hardman Phillips. The bill alleged that at the date of the deed from Hardman Phillips, August 16, 1844, a church building stood on the lot; that prior to and at that date there was also a burial ground on the lot in which persons were buried, and that for more than fifty years prior to the filing of the bill the above described portion of the two acre lot was used openly, notoriously and continuously, under a claim of right, and with the knowledge and consent of the owners of the fee, by the members of the congregation of the Baptist Meetinghouse and the people generally of that vicinity for burial purposes, and

was dedicated to the public for that use. After averring the interest of the plaintiffs and other members of the community, arising out of their having relatives and friends interred in the burial ground, the bill alleged that the defendant, assuming to own it by virtue of the deed to him, tore down and removed the fence on the north and west sides thereof; cut down and destroyed an ancient oak tree of great beauty, which stood in the burial ground, and not only was useful and ornamental but was of considerable pecuniary value; put up trespass notices excluding the plaintiffs and the public generally from going upon, or exercising any acts of ownership or other right in, the burial ground; and closed up the public road which gave access thereto. The prayers of the bill were: first, that the deed to the defendant be decreed to be void, "in so far as the same purports to convey title in fee to the burial ground hereinbefore referred to and described as follows" (here follows a description substantially the same as that above quoted); second, that the court, in the event of its declining to make that decree, decree that the defendant, his heirs and assigns, hold the title in fee "to said burial ground" only as naked trustees, subject to all the rights of the plaintiffs, the other members of the community at large and other persons interested therein, to use, care for, adorn and preserve the same; third, that the defendant be required to erect in place of the fence taken away by him, a fence equal in condition, material, stability, structure and appearance to the fence taken away; fourth, that he be required to pay to such person or persons as the court should direct such sum of money, to be expended in beautifying the burial ground, as the court should find sufficient for the adornment and beautifying of the same in a manner as nearly equivalent as possible to the ancient oak shade tree destroyed by him; fifth, that the public road be decreed to remain a public highway free from interference by the defendant, and that he be enjoined from closing or obstructing it; sixth, that the defendant be enjoined from interference with the rights of the plaintiffs,

and other members of the public, to freely use, maintain, and preserve the burial ground as a public burial ground; seventh, that the court by appropriate decree define the boundaries of the burial ground and provide that the same be fenced and preserved without any encroachment thereon by the defendant; eighth, that the defendant be required to pay the costs of suit; ninth, for such other and further relief as the nature of the case should require.

After hearing on bill, answer and testimony, the learned trial judge filed his findings of fact and conclusions of law, together with an opinion in which the questions involved are very ably and elaborately discussed, and in accordance therewith directed a decree nisi to be entered, which, after hearing upon exceptions, was made absolute. By the final decree the deed to the defendant for the entire two acres was declared null and void; the road was declared to be a public highway and the defendant was enjoined from closing and obstructing it; the defendant, his agents and employees, were enjoined from interfering in any way with the free use by the public of the "two acres of ground used by the public in the vicinity of Utahville as a public burying ground or as a glebe incident or appurtenant thereto;" the defendant was directed to pay to such persons, trustees or corporation as might thereafter be named by the court $50.00 as damages for the removal of the fence, $150 as damages for destruction of the tree, and $100 as damages for the destruction of the grove, to which we shall refer hereafter, making a total of $300, which sum is to be expended for the purpose of ornamenting the cemetery and restoring it to its former condition, and that the defendant pay the costs of suit.

As the appellant has not printed the testimony given at the trial we must accept the judge's findings of fact as correct. Excepting in two particulars, the decree is substantially in accordance with the allegations and prayers of the bill, and is fully justified by the findings of fact. This has been clearly and convincingly shown by the learned trial judge in his discussion of the questions of law

and fact, and therefore we proceed at once to consideration of the question whether the decree went beyond the scope of the bill, first in annulling the defendant's deed, so far as it relates to portions of the two acre tract outside the burial ground inclosure; secondly, in awarding damages for cutting down the grove of trees standing on the outside portions of the two acres. It will be seen from the foregoing detailed recital of the allegations and prayers of the bill that they relate exclusively and in unambiguous terms to a burial ground inclosed by a fence, bounded on the north by a public road, on the east and south by land of the heirs of Thomas Fleck and on the west by the remaining portion of the two acres. The call for the public road as a boundary on the north and for the remaining portion of the two acres as an adjoiner on the west show that the plaintiffs intentionally excluded from the scope of the bill the portions of the two acres lying north of the road and west of the fence. Nor is there any allegation in other parts of the bill tending to show that the plaintiffs claimed any interest of any kind in those portions of the two acres. Neither in the allegations nor in the prayers of the bill was any allusion made to the groves of trees standing on those portions or to a claim of damages for their destruction, and, as has been seen, the plaintiffs did not pray that the defendant's deed for the entire two acres be set aside, but only that it be set aside "in so far as the same purports to convey title to the said burial ground" which was precisely described in that immediate connection. The learned judge appreciated the difficulty growing out of the fact that the plaintiffs in their bill and their prayers for relief did not cover the two acres as a whole, but held that the defendant had no ground of complaint against the decree as to the whole two acres, for the reason that at the conclusion of the testimony the plaintiffs submitted additional prayers for relief which were allowed to be filed by way of amendment, and the defendant was given an opportunity to take any further testimony he desired on the questions raised by the amended prayers.

These additional prayers were, that the portion of the two acres lying north of the road be decreed to be appurtenant to the burial ground and for its convenient use, and that the portion lying west of the fenced burial ground be decreed to be appurtenant to the burial ground and for its convenient use and extension, and that the defendant be enjoined from interference with the rights of the plaintiffs and other members of the public to freely use, maintain and preserve the same as such appurtenances.

Under a prayer for general relief the plaintiff is entitled to such relief as is agreeable to the case made in the bill, though different from the special relief prayed for: Slemmer's App., 58 Pa. 155. But, it has been declared, it must not be inconsistent with the prayer for special relief: Del. & Hudson Canal Co. v. Penna. Coal Co., 21 Pa. 131; Thomas v. Ellmaker, 1 Pars. Sel. Eq. Cases, 98; Passyunk Building Assn.'s App., 83 Pa. 441. The limitation of the right of amendment of a bill is that it shall introduce no new cause of action, and the true criterion is to be found in the answer to the question, did the plaintiff so state his cause of action originally as to show that he had a right to recover what he subsequently claims: Wilhelm's App., 79 Pa. 120; Clark v. Pittsburg Nat. Gas Co., 184 Pa. 188. The prayer for relief may be amended with or without incidental amendments in the body of the bill where a different case is not made and the effect of the amendment is to enable the court to adapt its relief to the case made by the bill and sustained by the proof: 16 Cyc. of Law & Proc. 340. The application of this principle is well illustrated in Dillon. v. Hegarty, 222 Pa. 166. There the averments of the bill, together with a deed attached thereto, showed that the real purpose of the bill was to remove a cloud on the title, but the prayer asked only that the instrument in question be decreed a simple obligation for the payment of money. After the closing of the testimony the court permitted the plaintiff to substitute a prayer that the instrument be declared null and void, and stricken from the record as a cloud on plaintiffs' title, and before

allowing the amendment gave the defendants opportunity
to offer additional evidence. It was held on appeal that
the amendment did not introduce a new cause of action
and was properly allowed. The grounds of the deci-
sion appear in this excerpt from the opinion of Mr. Jus-
tice STEWART speaking for the court: "The cause of action
as set out in the bill admits of no other relief than that
indicated in the amendment. What was complained of
was that the recorded instrument was a cloud upon the
plaintiffs' title, and the action was brought to have the
cloud removed. The defendants in their answer recog-
nize this as the purpose, and agree that the question shall
be determined in this proceeding. The amendment was
certainly at variance with the theory of the plaintiffs as
to the nature of the recorded instrument when the bill was
filed; but this is of no consequence so long as it introduced
no new fact, and left the cause of action the same." A
very different state of pleadings is presented in this case;
for, as already pointed out, the bill contains no allegations
as to the subject-matter of the amendment to the prayers,
and avers no facts from which it could be implied that the
land referred to in the prayers was part of, or appurtenant
to, the burial ground precisely described in the bill.
Whether or not this fact was established by the proofs is
not a controlling question, as will be seen by the following
extended extract from the opinion by Mr. Justice BROWN
in Luther v. Luther, 216 Pa. 1: "The relief afforded by a
decree in equity must conform to the case as made out by
the pleadings as well as to the proofs. Every fact essen-
tial to entitle a plaintiff to the relief which he seeks must
be averred in his bill. Neither unproved allegations nor
proof of matters not alleged can be made a basis for equi-
table relief. Relief cannot be granted for matters not
alleged: 16 Cyc. of Law & Proc. 483. Neither allegations
without proof nor proof without allegations, nor allega-
tions and proof which do not substantially correspond,
will entitle complainant to relief, unless the defect be rem-
edied by amendment: 1 Daniel's Ch. Pl. & Pr. (6th ed.)

362. . . . Every averment necessary to entitle a plaintiff in equity to the relief sought must be contained in the stating part of the bill: Thompson's App., 126 Pa. 367; Penna. Schuylkill Valley Railroad Co. v. P. & R. Railroad Co., 160 Pa. 277." See also Story's Equity Pleadings, sec. 257; Gravenstine's App., 49 Pa. 310; Frey v. Stipp, 224 Pa. 390; Bishop v. Buckley, 33 Pa. Superior Ct. 123, 128; Miller v. Piatt, 33 Pa. Superior Ct. 547; Darlington v. Clemson, 41 Pa. Superior Ct. 309. Applying these principles to the case in hand we are constrained to the conclusion that the decree in the two particulars under consideration could not be made under the prayer for general relief or under the amended prayers without amending also the body of the bill by averring the facts necessary to entitle the plaintiffs to the relief sought in respect of the subject-matter of the amended prayer. We are not to be understood as intimating that we disagree with the learned trial judge in his conclusion that the defendant's deed was invalid and gave him no more right to the property outside the burial ground proper than he had to that inside. The point upon which we rest our decision is that his title to the land outside the burial ground was not in issue under the pleadings and therefore no decree could be made respecting it.

The first and third paragraphs of the decree are modified and amended so as to restrict their operation to the burial ground described in the foregoing opinion. The fourth paragraph is modified and amended by striking out the allowance of $100 as damages for the destruction of the grove, and by reducing the total damages to be paid by the defendant to $200. The decree as thus modified and amended is affirmed, and it is ordered that one-third of the costs of the appeal be paid by the plaintiffs and two-thirds by the defendant.