# Henry T. Slemmer's Appeal.

1. Where the question of the validity of a patent is directly involved, the
jurisdiction of the United States courts is exclusive; state courts have no
cognisance at law or in equity.

2. When patent rights come into question collaterally, their validity may
be inquired into by state courts.

3. State courts can, at law or in equity, enforce a contract or trust whose
subject is a patent, if the validity of the patent is not directly in question,
and may pass upon that when it arises *ex necessitate*, as in defence to an
action on a contract.

4. A joint patent taken out on the sole invention of one, or a sole patent
on an invention of more than one, is void.

5. Equity cannot decree an assignment of a patent on the ground that the
plaintiff, and not the patentee, is the original inventor.

6. Mere suggestions or assistance from others will not invalidate the right
of the patentee.   To effect this, the suggestions must furnish *all* the infor-
mation to enable the alleged inventor to construct the improvement, or use
the new process completely and perfectly.

7. It is not necessary to invalidate the right of the patentee, that every
minute thing about the invention should be communicated, but the sub-
stance must be.

8. In a joint invention, each party should invent or discover something
essential to the whole result.

9. A patent is the reward granted by the public for the skill and inge-
nuity of the inventor; no one else can have the exclusive right, and he may
assign it after the patent has issued.

10. Within the limits prescribed by law, the inventor may grant the use

of his invention before the patent is issued, provided he does not thereby forfeit his right, or abandon his discovery to the public.

11. If one employed by another, whilst receiving wages, experiments at the expense of his employer, constructs an invention and permits his employer to use it, without compensation paid or demanded, and then obtains a patent, a license to the employer to use the patent will be presumed.

12. Under a prayer for general relief plaintiff is entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for.

January 21st and 22d 1868.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.    STRONG, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Montgomery county :* In Equity.  To January Term, 1868, No. 207.

The bill in this case was filed April 2d 1866, by Jacob C. Slemmer, William Slemmer, and Charles Slemmer, against Henry T. Slemmer.

The allegations of the bill are, that in 1860 the plaintiffs and defendant entered by verbal agreement, into partnership " for the mining for and refining of rock oil or petroleum ;" the agreement was reduced to writing on the 5th of January 1861, and provided that the partners should bear the expense and share the profits equally, " excepting experimental refinery operations, for which the company should erect and own the apparatus, but the experimenter should obtain and own the oil so experimented with." The partners to the best of their abilities collected information on the subject of refining, the plaintiffs conveying to the defendant their " information, ideas and opinions," and afterwards erected a building with the necessary apparatus to test their ideas, &c., and reposed in the defendant the trust of applying them to a practical test, which he accepted : the partners " through the defendant," tested their ideas, &c., and in the latter part of 1860 and beginning of 1861, discovered a process for making a valuable lubricating oil in addition to the other products in refining petroleum. In February 1861, the experiments were suspended to await the developments of their mining operations, but the minds of the partners continued to be devoted to improving the process of refining.  In the fall of 1861 the experiments were resumed and conducted by the defendant, with the use of the partnership property, and for their benefit, " as to the practical result and discoveries ;" on concluding the experiments, the works were carried on the equal right of all to the " discoveries and information gained being admitted by all," and they continued to operate the works and use the information and discoveries for the common benefit.  In November 1861, a larger refinery was commenced by the firm and completed in May 1862 ; in this they carried on the business of refining and continued to improve the same for the common benefit.  The bill then averred, that in January 1866 the defendant, without the knowledge or consent of the plaintiffs, and contrary to their known wish, procured in his individual

[Henry T. Slemmer's Appeal.]

name a patent for the before-mentioned process of refining petroleum, with intent to defraud, &c., the plaintiffs.

The prayer was

1. To restrain the defendant, from any sale or use of said patent, to the detriment of the plaintiffs.

2. To decree an assignment of the patent to them and him, jointly as copartners, and to decree the payment to said firm of all moneys, and the transfer to said firm of all other valuable interests which he has acquired or may acquire by reason of the issuing to him, or the use by him, of said patent.

3. For further relief, &c.

The plaintiffs filed 64 interrogatories with the bill.

The agreement referred to in the bill is as follows:

" Articles setting forth an agreement verbally entered into by the undersigned in the summer of 1860, for the mining for, and disposition of, by sale or refining rock oil or petroleum in Pennsylvania and Virginia.

1. That each party shall bear an equal part of the expense, and receive an equal part of the profits resulting from the undertaking,—except experimental refining operations, for which the company erect and own the apparatus, but the experimenter to obtain and own the oil so experimented with.

2. Nothing to be undertaken without the assent of all parties; but a work commenced to be prosecuted, unless all parties agree to suspend or abandon.

3. Each member of the company shall advance money for company purposes, as he may be able to do so and the company desire to receive it, said advancement to bear interest from the date thereof; but a balance sheet shall be struck on the first of January in each year, or oftener if desired by three members, wherein the amount due by each deficient member shall be covered by a cash payment, or by a note to the member whose advance is in such excess, which note shall, at the desire of the holder, be endorsed by all the members.

4. If any member desires to leave the company, he shall be permitted to do so upon agreement between all the members as to the value of his interest in the company, which shall be paid him by the remaining part of the company, by note or cash, or by his payment to the company of the sum that may appear to be due from him to equalize his part of the expenses not theretofore borne by him, such payment to be by note or cash. Where the parties cannot mutually agree as to such value or amount to be paid as above provided, such amount shall be designated by a disinterested party, to be selected as arbitrators are usually chosen. No appeal from such arbitrament to be authorized.

5. A final settlement of company affairs may be demanded by the concurrent action of any three members, when the assets and

debts shall be divided in a similar manner to that set forth in the preceding paragraph.

6. In case of the death of a member, his interest in the company shall not be subject to sale, but may be withdrawn at the request of his legal representatives, or of the remaining members, in the same manner as provided for the voluntary retirement of a member by the fourth paragraph."

By his answer the defendant admitted obtaining the patent, and averred, "the validity and effect of my said patent and of my exclusive claims and rights under the same, and the allegations and matters in relation thereto contained in the said bill, are not cognisable by this court," and asked that the bill be dismissed.

He further answered, averring that the agreement of January 5th 1861 was merged in another of the 5th of June 1862, and that, with all other agreements, was abrogated by the plaintiffs by a written communication of January 25th 1866. The partners purchased oil-land leases in Venango and Crawford counties, and the business of mining oil proving unprofitable, the plaintiffs abandoned it. The plaintiffs had no idea before November 1861 of engaging in refining oil, and were ignorant of the method of refining; in 1860 the defendant conceived the idea of making from petroleum a better oil than any in use; erected a small experimental refinery at his own expense, and succeeded towards the end of that year without any aid from the plaintiffs. He then proposed to them to form a partnership for refining oil as well as boring for it, he to continue his labors at his refinery at his own expense in the purchase of crude oil, and to enjoy its profits; this resulted in the verbal agreement embodied in the article of January 5th 1861. Having continued to entertain the idea of erecting a large refinery elsewhere with the plaintiffs, or, if they declined, without them, he purchased in October 1860 a large lot in Norristown, and made preparations for erecting a refinery. The plaintiffs having been unsuccessful in oil mining in the West, agreed to join him in the business of refining, and they entered into the agreement of June 1862. The agreement was between the defendant of the first part and the plaintiffs and defendant, "trading under the name and style of 'Slemmer Brothers,' oil refiners, of the second part." It recited that the firm had erected on the defendant's premises "in and through his name," works for refining petroleum; the defendant thereby leased to the firm a lot at the corner of Ford and Egypt streets, Norristown, for fifteen years from April 1st 1862, at $200 per annum; the parties agreed that the lease might end at any period within fifteen years if the firm should desire it in consequence of closing their business as oil refiners, and at the end of fifteen years or earlier termination of the lease, the defendant should purchase all the buildings, &c., erected on the premises at a price to be agreed upon, or, if

they could not agree, the price to be fixed by three arbitrators, "selected in the usual manner," and the firm agreed to give up the premises when the lease should terminate, &c. Under this agreement the firm continued the business of refining oil until about January 1866, when the plaintiffs planned to get the refining business into their own hands, and dissolve the partnership, which they attempted to carry out by terminating the lease, purchasing other lands on which to erect a refinery for themselves, threatening to take away the machinery of the existing works for their own use, refusing to buy crude oil, voting themselves large salaries out of the firm funds, &c., and doing other things which rendered the continuance of the partnership impossible.

The defendant further averred that the discovery of the process for making the oil was solely his own, and so often acknowledged by the plaintiffs. He denied that he acted in trust for them or that they gave him any ideas, &c., or assisted him in the matter in any way; or that the discovery was to accrue for their benefit; averred that by his permission they were to share in the profits as long as the partnership continued, which was the whole extent of their interest. The article patented is a superior article to that made at the refinery, and was not perfected until a few days before his application and after the plaintiffs had given him notice of the abrogation of all the agreements and of the dissolution of the firm.

The defendant answered the interrogatories categorically; they do not involve any matters making it necessary to give them.

The written communication of January 25th 1866, from the plaintiffs, referred to in the answer, is as follows :—

"Norristown, January 25th 1866.

"Dear Brother—Sufficient time having elapsed since our annual meeting (and the extraordinary steps you have taken in regard thereto), for a calm and serious reflection, we deem it necessary to again bring the subject-matter before you in a decisive manner, and ask your determination in writing.

"In the first place we say to you that under no consideration will we continue the business upon the basis heretofore carried on. The only form in which we will consent to continue the firm is, a total abrogation of all agreements heretofore made, and a new one formed, in which each member shall be equally interested in the realty (as our previous proposal), and share equally the labors of conducting the business, or its full equivalent in salary.

"You failing to accede to this, we propose :

"To sell to you all our interests in the works, together with all the oils, machinery, &c., on hand, with credits and debits (except the last undrawn annual dividend which we claim), for the sum of Fifty Thousand Dollars cash upon delivery of the works.

[Henry T. Slemmer's Appeal.]

" Should you refuse all of the foregoing, our only alternative will be to conduct the business in the future, as will best promote the interests of the firm, with a view to an easy, just and equitable distribution of our property, and the dissolution of the firm, and surrender of the lease at as early day as practicable, upon your complying with its requirements."

The patent was dated February 27th 1866; it was for "a new and useful improvement in the manufacture of lubricating oil."

The court having overruled so much of the defendant's answer as denies the jurisdiction of the court, appointed Joseph W. Fornance examiner.

From the plaintiffs' evidence it appeared that the defendant had, in the latter part of the year 1860, been experimenting with great assiduity upon the refinement of petroleum, and for that purpose put up a small refinery on Strawberry alley, in Norristown.   At this refinery Charles and Jacob worked, as well as the defendant.   On one or more occasions, when defendant and the other members of the firm were present, a witness advised them to get a patent, and one of the firm said, pointing to his head, and in hearing of the defendant, "the best patent is here."

The defendant gave evidence that he did all the experimenting; when the other partners were working in the refinery they took their instructions from him.   In the correspondence of the partners with each other and with others, which was very voluminous, the defendant was recognised as the experimenter, and the experiments spoken of as his.   A circular issued by the firm speaks of the oil being "manufactured under the eye of our experienced chemist, and by a process of his own."   There was a very great mass of testimony taken, some of it cumulative of the statements given above, and much irrelevant to the matters in issue in the case.

The master found the creation of the partnership in 1860, and that the object was mining for and refining petroleum; that shortly after the formation of the partnership, an experimental refinery built by the defendant was adopted by the firm; at it, while the plaintiffs were managing oil wells, the defendant, as agent of the firm, made experiments in order to discover a mode of profitable refining.   In this the defendant was much assisted by information procured and services rendered by plaintiffs.   The experiments were successful, producing both illuminating and lubricating oil of good quality.

The defendant, on the 30th of January 1866, filed in his own name, in the patent office, a petition for a patent for the process of manufacturing double refined lubricating oil, for which a patent was afterwards granted to him.   "The defendant, in his experiments, was much assisted by information procured and labor fur-

nished by the plaintiffs. And after the operations were begun at the new refinery, the double refined lubricating oil was much increased in quality and value, by improvements made by plaintiffs in the process of manufacture. The manufacture of the double refined lubricating oil afterwards became the main business of the firm. The process of making the double refined lubricating oil was a secret known only to the members of the firm, and they had agreed among themselves not to take a patent for it. The process, as described in the specification in the letters patent, appears to differ in no material respect from that described as being the process of manufacture at the refinery prior to January 1866. If, however, there is, in the process described in the specification, any substantial improvement, the improvement must have been the result of experience and experiment prior to January 25th 1866; for the petition for the patent was filed at Washington but five days after date, and defendant had no apparatus to perfect such improvement in the mean time. The company continued in the free use and enjoyment of the process of manufacture, their right thereto being unquestioned and freely admitted, from the commencement of operations until January 1866."

From the above stated facts the master found the following conclusions :—

"1. That the discoveries in refining oil made by defendant at the experimental refinery, together with the whole process of manufacturing the refined oils, as afterwards used by them, were the property of the company.

"2. That if the copartnership be not dissolved, the plaintiffs are entitled to an injunction restraining the defendant from the sale or use of said patent to their detriment; also to a decree assigning said patent to them and said defendant jointly as copartners.

"3. But if the copartnership be dissolved, then said patent, being part of the assets of the company, is subject to such disposition as would best contribute to the interest of all parties concerned; and as it is not to the interest of these plaintiffs that said patent should be sold, they are, in case of a dissolution, entitled to a decree of court assigning three-fourths of said patent to them respectively as individuals."

Both parties filed exceptions to the report. The court (Chapman, P. J.) confirmed the report, and decreed, December 16th 1867, "that the defendant do forthwith convey to the firm of Slemmer Brothers the patent mentioned in the bill of the plaintiffs, dated February 27th 1866, and it is further ordered and decreed that the said defendant be and he hereby is perpetually enjoined against using or selling the said patent to the detriment of the said plaintiffs."

8 P. F. SMITH—11

[Henry T. Slemmer's Appeal.]

From this decree the defendant appealed, and in a number of specifications assigned the decree for error.

*R. C. McMurtrie* and *D. H. Mulvany* (with whom was *B. M. Boyer*), for appellants.—The court had not jurisdiction: Acts of Congress July 4th 1836, § 17, 1 Bright. U. S. Dig. 732, pl. 48; January 18th 1861, § 1; 2 Id. p. 132, pl. 1. The jurisdiction of the United States courts is exclusive: Curtis on Patents 539, 540–541, § 495–496; Dudley *v.* Mayhew, 3 Comst. 14; Elmer *v.* Pennel, 40 Maine 434; Goodyear *v.* Day, 1 Blatchf. 565.

If the patentee has conceived the principle of the invention, suggestions, hints, conceptions or practical assistance derived from others will not impair his right to the patent: Curtis on Patents, p. 99, § 118; Pitts *v.* Hall, 2 Blatch. 229, 234; McClurg *v.* Kingsland, 1 Howard 204; Stevens *v.* Gladding, 17 Id. 451.

*C. Hunsicker* and *G. R. Fox*, for appellees.—The state courts have jurisdiction of partnerships: Act of June 16th 1836, § 13, Pamph. L. 789, Purd. 406, pl. 3. The validity of the patent is not called in question; it is a question of property in it, and United States courts have not jurisdiction: Brooks *v.* Stolley, 3 McLean 523; Nesmith *v.* Calvert, 1 W. & M. 34; Osborn *v.* U. S. Bank, 9 Wheat. 826; Goodyear *v.* Day, 1 Blatchf. 565; Wilson *v.* Sandford, 10 Howard 99; Burr *v.* Gregory, 2 Paine 426; Rheem *v.* Holliday, 4 Harris 347.

As to all matters within the scope of the joint business, the brains, skill, time and labor of the defendant were the property of the firm: Collyer on Partnership 166, 167, 170–172, 183–189; Featherstonhaugh *v.* Fenwick, 17 Ves. 298; 3 Kent's Com. 51, 52; 1 Story's Eq. Jur. § 667.

The opinion of the court was delivered, May 7th 1868, by
SHARSWOOD, J.—This bill alleges that a partnership between the plaintiffs and the defendant for the mining for and refining of rock oil or petroleum was formed in the year 1860; that a building was erected with the funds of the firm for the purpose of making experiments in refining oil; that the plaintiffs conveyed to the defendant ideas, information and opinions, obtained and formed in relation thereto; that the plaintiffs, through the defendant, did experiment and reduce to a practical test the ideas and information of all during the latter part of 1860 and beginning of 1861, resulting in the discovery of a process for making a very valuable lubricating oil; that in 1861 the erection of a larger refinery was commenced, and on its completion, about May 1862, the firm entered more extensively into the business of refining, using the new process, improving thereon and perfecting the

[Henry T. Slemmer's Appeal.]

same; that they have continued in the free and unquestioned use of this process down to the year 1866; that in the month of January 1866, the defendant, without the knowledge or consent of the plaintiffs, applied for and procured a patent from the government of the United States for the said process, in his own name. The bill prays that the defendant may be enjoined from any sale or use of the said patent to the detriment of the plaintiffs; that the patent may be assigned to the firm as their joint property; and for general relief.

The answer, after demurring to the jurisdiction of the court, avers that the agreement of partnership in 1860 was suspended by a new agreement of June 5th 1862; denies that prior to November 1860, the firm was engaged in the business of refining; claims that he was the sole inventor of the patented process; admits that a partnership was formed in the business of refining; insists that by its terms he was to continue his labors in experimenting at his own expense in the purchase of crude oil, and to enjoy the profit arising therefrom, and that "the new and improved method of producing lubricating oil from the heavy distillate of petroleum" was not perfected by him until within a few days of the date of his application for a patent.

The demurrer to the bill was overruled by the court below, and after replication the case was referred to an examiner to take testimony, and subsequently to the same gentleman as master. He reported in favor of the plaintiffs; exceptions filed to his report were dismissed; and the court below entered a decree according to the prayer of the bill.

The first question which naturally arises is as to the jurisdiction of the court.

The Act of Congress of July 4th 1836, § 17 (4 Story 2512), provides "that all actions, suits, controversies and cases arising under any law of the United States, granting or confirming to inventors the exclusive right to their inventions or discoveries, shall be originally cognisable, as well in equity as at law, by the Circuit Courts of the United States." It has been settled in the construction of this as well as of former acts on the same subject, that the jurisdiction thus conferred upon the Federal courts is exclusive, so that the state courts have no cognisance of either actions at law or bills in equity, in which the question of the validity of a patent is directly involved: Parsons v. Barnard, 7 Johns. 144; Livingston v. Van Ingen, 9 Johns. 582; Dudley v. Mayhew, 3 Comst. 9; Gibson v. Woodworth, 8 Paige 132; Parkhurst v. Kinsman, 2 Halst. Ch. R. 608. But though patent rights are peculiarly within the jurisdiction of the courts of the United States, yet it is undoubtedly true that when they come in question collaterally, their validity may become a subject of inquiry in the state courts. Thus in a suit upon a promissory note, if

[Henry T. Slemmer's Appeal.]

it is set up as a defence that the consideration was the sale of a patent right, and that the patent is void, so that there was in fact no consideration, the state courts constantly exercise jurisdiction: Bliss *v.* Negus, 8 Mass. 46; Cross *v.* Huntley, 13 Wend. 385; Rich *v.* Atwater, 16 Conn. 414; Burr *v.* Gregory, 2 Paine C. C. 429; Rheem *v.* Holliday, 4 Harris 347. The jurisdiction is not defeated because the subject-matter of the action concerns the use of a patent right, so long as the question of the validity of the patent is not necessarily involved, but arises only incidentally and by way of defence: Sherman *v.* The Champlain Transportation Company, 31 Vermont 162; Tomlinson *v.* Ballet, Law's Dig. 229. Accordingly the courts of the United States refuse to take cognisance of cases between citizens of the same state where they involve not the infringement of the patent, but controversies growing out of contracts of which it is merely the subject-matter: Goodyear *v.* Day, 1 Blatchf. 565; Burr *v.* Gregory, 2 Paine 436; Brooks *v.* Stotley, 3 McLean 523. The result of the authorities, then, appears to be that the state courts are competent, either at law or in equity, to enforce a contract or a trust, of which a patent right is the subject-matter, where the validity of the patent is not directly in question, and even to pass on that when it arises *ex necessitate,* as by way of defence in an action on a contract.

If, then, there could be gathered from the proofs in this case a contract or trust of this patent for the benefit of the plaintiffs, the want of jurisdiction of the court would not be in the way. The plaintiffs do not attack the patent: they admit its validity. But the difficulty of the case is that they claim a trust or ownership on grounds which, if true in fact, show that the patent is void in law. The question is directly involved who was the true and original inventor, and necessarily, therefore, the validity of the patent. The plaintiffs claim that they are joint inventors with the defendant. "A joint invention," says Mr. Curtis, "may be a good subject-matter of a patent; for the statute supposes the case of a joint invention, and provides for it; but if an invention, which in point of fact was made by more than one person, is made the subject of a patent by any one of them, he cannot take the oath required by the statute, declaring himself to be the original and first inventor, or if he does take it, his patent will be void." Curtis on Patents, sect. 112. In this he is sustained by the authorities: Barrett *v.* Hall, 1 Mason 472; Stearns *v.* Barret, 1 Pick. 446; Moffat *v.* Soby, 2 Paine 103; Hotchkiss *v.* Greenwood, 4 McLean 461; Ransom *v.* Mayor, &c., of New York, Law's Dig. 458; Potter *v.* Wilson, Ibid. 454. It is true that these are all cases, in which a joint patent taken out on the sole invention of one, was held to be void. But the logic, which requires the correlative proposition to be affirmed, is inexorable. The object of the law is to secure to inventors the benefits of their inventions or dis-

coveries.   If the invention is as it may be, joint, that object is as much frustrated, if not more so, in the one case as the other. The patentee is not a trustee for the true inventor, either in whole or in part.   The true inventor has never been allowed to claim the benefit of a patent granted to one who, had stolen the invention from him.   It would be contrary to the whole policy as well as the express provisions of the system.   Whatever might be the case, where there appeared to be a contract or trust resulting from the understanding of the parties or the relation of the original inventor to others, a court of equity cannot decree an assignment of a patent on the ground that the patentee is not, but the plaintiff is the true original inventor, in whole or in part.   Besides which, for a state court to decide directly that A. is not the sole original inventor, but that A. and B. are jointly the inventors and so entitled to the patent, and to decree an assignment or grant an injunction accordingly, would be to usurp the jurisdiction which has been exclusively vested, as we have seen, in the courts of the United States.

If, indeed, we had jurisdiction to afford the plaintiffs the specific relief for which they pray, we are by no means satisfied that the allegations of the bill in that aspect are sustained, by the proofs. These allegations are positively denied by the answer, which in this respect is responsive to the bill.   The defendant undoubtedly has the *prima facies* in his favor by the grant of the patent.   The *onus probandi* is cast by it on the plaintiffs.   All the authorities are agreed in this: Alden *v.* Dewey, 1 Story Rep. 341; Pitts *v.* Hall, 2 Blatchf. 565; Hotchkiss *v.* Greenwood, 4 McLean 461. Mere suggestions or assistance by others will not invalidate the right of the patentee: Curtis on Patents, §§ 47, 48, 49, 2d ed. Suggestions, to be effectual to that end, must furnish *all* the information necessary to enable the alleged inventor to construct the improvement or use the new process completely and perfectly. If they merely aided him in arriving at the useful result, but fell short of suggesting an arrangement that would constitute a complete machine or a perfect process, and if, after all the suggestions, there was something left for him to devise and work out by his own skill or ingenuity in order to complete the arrangement, then he is in contemplation of law to be regarded as the first and original discoverer: Nelson, J., in Pitts *v.* Hall, 2 Blatchf. 229. It must appear that the invention was substantially communicated to the patentee, so that without more inventive power, he could have applied it, in practice.   It is not enough that a hint is given, nor on the other hand is it necessary that every minute thing about the invention should be communicated, but the substance must be: Story, J., in Alden *v.* Dewey, 1 Story's Rep. 338.   It seems necessarily to follow from these principles that in a joint invention, each party should invent or discover something essen-

[Henry T. Slemmer's Appeal.]

tial to the whole result.   In the case before us it is conceded that the defendant was the actual experimenter.   In all the correspondence he is spoken of as conducting the experiments.   There is no direct evidence of any important suggestion made by either of the plaintiffs, bearing upon " the new and improved method of producing lubricating oil from the heavy distillate of petroleum." Indeed, the circular issued by the firm, the manuscript of which, according to the testimony of the printer, was brought to him by one of the plaintiffs in September 1863, seems to be very persuasive, if not conclusive, evidence on this point.   It says to the public :  " Our oils are manufactured under the eye of our experienced chemist, *by a process of his own.*"

It must follow that the decree below is erroneous.   The master indeed reported as a conclusion of fact " that the discoveries in refining oil, made by defendant at the experimental refinery, together with the whole process of manufacturing the refined oils as afterwards used by them, were the property of the company." He failed to make, however, what is a very important distinction between a right or property in the use of a discovery and a right to a patent or exclusive monopoly.   The patent right is the reward granted by the public for the skill and ingenuity of· the inventor.   By the Constitution of the United States (art. 1, § 8, ¶ 8), power is granted to Congress " to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."   No one but the inventor can have this exclusive right. He may assign it after the patent has been issued, or perhaps bind himself by contract before to execute such an assignment, which equity would specifically enforce.  But against the express oath of the defendant we see no sufficient proof of any such contract, express or implied.   He may have been present on one or more occasions when it was spoken of as a secret of trade possessed by the firm : that is the amount of the evidence at most. The inventor may however grant the use of his invention, within the limits prescribed by the law before the patent is issued, provided he does not thereby forfeit his right or abandon his discovery to the public.   This we conceive to be the extent of the equity of the plaintiffs as made out by the evidence.   The defendant indeed admits in his answer that the plaintiffs were by his own permission and acquiescence to share as copartners with him in the profits arising from the manufacture of oil by the said process—he adds, " so long as the copartnership continued." The whole of this allegation is irresponsive.  While there is ample evidence to sustain the equity of the plaintiffs to the use of the discovery, there is nothing to restrict it to the period of the existence of the partnership.   The case indeed falls entirely within

the principle established in McClurg v. Kingsland, 1 How. (S. C.) 202), in which it was held that if a person employed in the manufactory of another, while receiving wages, makes experiments at the expense of his employer, constructs the article invented and permits his employer to use it, no compensation for the use being paid or demanded, and then obtains a patent, these facts will justify the presumption of a license to use the invention. No limitation to the license was implied in that case, confining it to the period of time that the inventor continued in the employment of the other; neither can any be implied here.

Under the prayer for general relief, the plaintiffs are entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for: Hiern v. Mill, 13 Ves. 119. By accepting a license from the defendant the plaintiffs will be estopped from contesting the validity of his patent. They have not, however, alleged the invalidity of the patent, and it is therefore not inconsistent with the frame of the bill to decree that the defendant shall grant them a license.

> Decree of the Court of Common Pleas of Montgomery county reversed, and now it is ordered and decreed that the defendant Henry T. Slemmer do execute and deliver to the plaintiffs jointly and severally a license to use the improvement in the manufacture of lubricating oil, the exclusive right to which was granted to him by letters patent from the United States, under the seal of the Patent Office, bearing date February 27th 1866, for the term of years therein described, and for any extension or continuation of the said term, which may be procured by or for the benefit of the said Henry T. Slemmer, his heirs, executors, administrators and assigns, and that the assignment of the patent, executed by the said Henry T. Slemmer and filed in the office of the prothonotary of the court below, be delivered up to him to be cancelled. Each party to pay his own costs of the suit below and of the appeal.