## ANDERSON *v.* BRANSTROM.

1. PUBLIC OFFICERS —SALARY —ASSIGNMENT —CONTRACTS —PARTNERSHIP— ATTORNEY AND CLIENT— PROSECUTING ATTORNEY— PUBLIC POLICY—PUBLIC SERVICE.

In a suit to obtain a partnership accounting between two attorneys at law, a clause in the articles of partnership providing for division of the salary of defendant, earned as prosecuting attorney, is unenforceable, being contrary to the policy of the law.

2. SAME—CONTRACTS—PUBLIC POLICY.

The test of the validity of any contract assigning future earnings of a public officer is not whether, if it is faithfully carried out, the public will be harmed, but whether its tendency will affect the public.

3. SAME.

The effect of the void clause in the agreement is to invalidate the entire contract.

MOORE, C. J., dissenting.

Appeal from Muskegon; Sullivan, J. Submitted June 12, 1912. (Docket No. 96.) Decided December 17, 1912.

Bill by John G. Anderson against William J. Branstrom for an accounting under articles of partnership, for an injunction and other relief. From a decree for complainant, defendant appeals. Reversed.

*John G. Anderson* and *Philip W. Kniskern* (*Stephen H. Clink*, of counsel), for complainant.

*William J. Branstrom* (*Albert G. Day* and *A. B. Cogger*, of counsel), for defendant.

OSTRANDER, J. The decree appealed from is in affirmance and enforcement of the unexecuted partnership contract, not its specific performance, it is true, but none the less for damages to be measured in part by the results of a performance of the contract according to its terms. The agreement was to divide equally between the partners the salary of the office of prosecuting attorney, to which office one of the parties, before or after the making of the agreement, succeeded. This salary is the *quid pro quo* paid by the public for the performance of public official duties, and the agreement, in substance and effect, assigns, before it is earned, this salary. The decree enforces the agreement to assign, not in terms, but actually.

The test of the validity of such an agreement is not, I think, whether, if it was faithfully carried out, the public would be harmed, but its validity must be measured by its tendency. It is undoubtedly true that the salary of public office is frequently brought into firm accounts and divided by the officer with partners. But assignments of unearned emoluments of public office are not favored, and courts have, pretty uniformly, refused to enforce them. The agreement in question amounts to such an assignment, and it would seem therefore that the courts should refuse to enforce the agreement, directly or indirectly. We said in *Granger* v. *French*, 152 Mich. 356 (116 N. W. 181, 125 Am. St. Rep. 416), that—

"The rule of public policy makes all anticipatory assignments of salary by the relator void, and demands that he

be paid his official salary notwithstanding such assignments."

This rule was restated and affirmed in *Dunkley* v. *City of Marquette*, 157 Mich. 339 (122 N. W. 126, 17 Am. & Eng. Ann. Cas. 523). See, also, *Bailey* v. *Quarry Co.*, 166 Mich. 321 (129 N. W. 17); Mechem on Public Offices and Officers, § 370; *Benson* v. *Bawden*, 149 Mich. 584 (113 N. W. 20, 13 L. R. A. [N. S.] 721).

In my opinion, the agreement of defendant to divide his official salary was void, and in consequence the entire agreement is invalid. The decree should be reversed, and the bill dismissed, with costs of both courts to defendant.

STEERE, MCALVAY, BROOKE, STONE, and BIRD, JJ., concurred.

MOORE, C. J. (*dissenting*). The parties to this litigation entered into the following agreement:

"This agreement made this 10th day of February, A. D. 1911, by and between John G. Anderson and William J. Branstrom of the village of Fremont, Mich., witnesseth:

"(1) The said parties hereby agree that they will become and be partners in business for the purpose and upon the terms herein stated.

"(2) The firm name of the partnership shall be Anderson & Branstrom.

"(3) The business to be carried on to be general practice of law at the village of Fremont in Newaygo county, Mich., and at the city of Muskegon, in Muskegon county, Mich. And the said partnership shall continue for the period of five years, subject, however, to the conditions hereinafter mentioned.

"(4) The said John G. Anderson shall conduct the business of said partnership at the said city of Muskegon, and the said William J. Branstrom shall conduct the said business of the said partnership at the village of Fremont until such time as a sufficient income shall be derived from the business at the city of Muskegon to warrant his removal to the last-mentioned place, after which time the office of said firm in the village of Fremont shall be closed and their said business in the city of Muskegon shall be conducted by them jointly. Each party shall give his en-

tire time and attention to said business, and shall endeavor at all times to promote the interests of said partnership business. The said John G. Anderson shall assist in the trial of all cases in Newaygo county when it is deemed necessary and the said William J. Branstrom shall assist in the trial of all cases in Muskegon county and elsewhere when it is deemed necessary.

"(5) The said parties shall each contribute their law libraries and furniture to the use of said business, and shall purchase a typewriter and such other necessary furnishings as may be deemed necessary at the joint expense of the parties.

"(6) It is hereby understood and agreed between the parties that the said John G. Anderson is to have all the proceeds and profits from the business done at the Muskegon office, except such proceeds as may be derived from business coming from Newaygo county, which last-mentioned business shall be credited to the Fremont office, and shall pay all expense of conducting the business of said firm at Muskegon, except the expense attended upon such business as shall be credited to the Fremont office as aforesaid, such last-mentioned expense to be borne equally by the parties hereto. The proceeds from the business of the Fremont office, including the salary of the prosecuting attorney, shall be divided equally between the parties hereto, and the expense of said Fremont office shall be borne equally by the parties hereto. The said agreement as to division of proceeds shall be in effect for the period of two years unless otherwise mutually changed by the parties hereto.

"Each party is to keep an accurate account of the business done and the proceeds derived from the respective offices of the firm, and said books of account shall be the property of the firm and subject to the inspection of either party hereto at all times.

"John G. Anderson.
"William J. Branstrom."

Pursuant to the agreement, they did for a time a partnership business. In October, 1911, the defendant declined to go on with the partnership. This bill was filed asking for an accounting and for an injunction restraining defendant from withdrawing from said partnership, with a general prayer for relief, and by amendment later to the bill of complaint was added a prayer for

damages. The defendant demurred to the bill, but later it was agreed in open court that an answer should be put in, and it was put in, and a hearing had, the complainant swearing several witnesses. Defendant offered no proofs. A decree was entered, the essential parts of which are as follows:

"(1) That said partnership be and the same is hereby dissolved.

"(2) That the complainant shall recover from the defendant one-half of the assets and profits of said copartnership.

"(3) That the complainant shall recover from the defendant his damages suffered and sustained by him by reason of the failure of the defendant to carry out and perform said written contract of copartnership.

"(4) That further proof shall be taken before the court as in a suit at law, for the purpose of ascertaining and determining what the assets and profits of said copartnership were and are, and for an accounting between the parties, and for the purpose of ascertaining and determining the amount of damages suffered and sustained by the complainant by reason of defendant having refused to carry out and perform the said written contract of copartnership.

"(5) That the parties hereto produce before this court, and leave with this court until otherwise directed, all books, papers, and documents and writings in their custody or under their control relating to the business of said parties at Fremont, and that the parties come into court to be examined under oath touching such assets, profits, and accounts, and that they have the right to produce and examine witnesses in relation thereto, and in relation to such damages as complainant has sustained by reason of the refusal of defendant to carry out and perform said written contract of copartnership. That this court retain jurisdiction of this cause for the purposes set out and stated in this decree, and to settle all matters in controversy between the parties in relation to said partnership agreement."

From this decree defendant has appealed. The complainant did not appeal.

As to the claim made by the appellant that the case

should be heard here on the demurrer, in view of what occurred in open court, we think that claim is not tenable. The first paragraph of the bill of complaint reads:

"(1) That on or about the 1st day of September, A. D. 1909, he was engaged in the practice of his profession of an attorney at law at the village of Fremont, in the county of Newaygo, State of Michigan, and had practiced law at that place for several years previous to the last-mentioned date, and had a lucrative business established, and was at that time the prosecuting attorney of said Newaygo county; that on or about the 1st day of September, 1909, he entered into a contract of partnership with one William J. Branstrom, the defendant hereinafter named, and the said business of your orator was continued from such time until the present under the firm name and style of Anderson & Branstrom; that the said William J. Branstrom was a young man who had at that time just been admitted to the bar, and was without any practical experience whatever; and that during the summer of 1910 the parties hereto decided to engage in the practice of their profession in the city of Muskegon, in said county of Muskegon, and it was decided by the parties that the said John G. Anderson would not present himself as a candidate for re-election to the office of prosecuting attorney, but that the said William J. Branstrom should run for such office, instead of your orator, and your orator would go to the said city of Muskegon to reside and engage in the practice of law about the 1st day of January, 1911, or as soon thereafter as matters might be arranged so he could remove to said city of Muskegon, and in accordance with such arrangement the parties on or about the 10th day of February, 1911, entered into a contract, a copy of which is hereto attached, marked 'Exhibit A,' and is made a part of this bill of complaint; that, in accordance with the plans of the parties, the said John G. Anderson refrained from running for the office of prosecuting attorney for Newaygo county, and the said William J. Branstrom ran for said office, and was elected thereto; that at the time said Branstrom presented himself to the electors of Newaygo county for election to said office he was little known by the voters of said county, and your orator together with said defendant held public meetings at various places in said county for the purpose of procuring the election of said defendant to said office, and your orator

spent a great deal of time and money in the matter of holding meetings at various places within said county for the purpose of procuring the election of said defendant to said office, your orator relying on the good intentions of said defendant to carry out his agreement in regard to continuing the business of said firm according to the agreement of the parties afterwards, and on the 10th day of February, 1911, reduced to writing and executed by the parties and exhibited herewith and as a part hereof."

Exhibit A is the contract we have already quoted. After the complainant had testified that this paragraph was substantially true, it was offered in evidence by defendant, and was received in evidence by consent of the complainant. He testified that the precise terms of Exhibit A were not agreed to until after the defendant became prosecuting attorney. Based upon the testimony of complainant to which reference has been made and the averments in the bill of complaint which we have quoted, the defendant insists that complainant has no claim he can enforce, because the agreement of the parties is void as against public policy. He cites in support of his contention the case of *Brooks* v. *Cooper*, 50 N. J. Eq. 761 (26 Atl. 978, 21 L. R. A. 617, 35 Am. St. Rep. 793); 9 Cyc. pp. 495, 546; 32 Cyc. pp. 724, 725. An examination of these authorities will show that, while they discuss the doctrine of public policy, they are not controlling. None of them relate to a partnership relation between an attorney and a prosecuting attorney.

In the case of *Brooks* v. *Cooper*, *supra*, the contract was in contravention of a statute of the State. In the opinion the following language was used:

" It has been declared that public policy is a variable quality; but the principles to be applied have always remained unchanged and unchangeable, and public policy is only variable in so far as the habits, capacities, and opportunities of the public have become more varied and complex. The relations of society become from time to time more complex, statutes defining and declaring public and private rights multiply rapidly, and public policy often changes as the laws change, and therefore new applica-

tions of old principles are required. *Davies* v. *Davies*, 36 Ch. Div. 365.

"Whatever tends to injustice or oppression, restraint of liberty, restraint of legal right; whatever tends to the obstruction of justice, a violation of a statute, or the obstruction or perversion of the administration of the law; whatever tends to interfere with or control the administration of the law as to executive, legislative or other official action, whenever embodied in and made the subject of a contract, the contract is against public policy, and therefore void, and not susceptible of enforcement."

If the contract made between the parties here was faithfully carried out, it is difficult to see how the public would be harmed. Prosecuting attorneys are so often members of a firm of lawyers that we might take judicial notice of the fact that such partnerships exist. The statutes of the State take notice of the fact, and provisions are made regulating the conduct of the members of the partnership. Sections 2567, 2568, 1 Comp. Laws (1 How. Stat. [2d Ed.] §§ 1162, 1163). From our knowledge of attorneys we can readily see that it may be a great advantage to the people of the State if the prosecuting attorney, who is usually a young man, has the benefit of being associated with a lawyer or lawyers of greater experience. We are not satisfied that the public is harmed by such a contract. In *Solomon* v. *Kirkwood*, 55 Mich. 256 (21 N. W. 336), the following language was used:

"(1) We think the judge committed no error in his instructions respecting the dissolution of the partnership. The rule on this subject is thus stated in an early New York case. The right of a partner to dissolve, it is said, 'is a right inseparably incident to every partnership. There can be no such thing as an indissoluble partnership. Every partner has an indefeasible right to dissolve the partnership as to all future contracts by publishing his own volition to that effect; and, after such publication, the other members of the firm have no capacity to bind him by any contract. Even where partners covenant with each other that the partnership shall continue seven years, either partner may dissolve it the next day by proclaiming his determination for that purpose; the only con-

sequence being that he thereby subjects himself to a claim for damages for a breach of his covenant. The power given by one partner to another to make joint contracts for them both is not only a revocable power, but a man can do no act to divest himself of the capacity to revoke it. *Skinner* v. *Dayton,* 19 Johns. [N. Y.] 513, 538 [10 Am. Dec. 286]. To the same effect are *Mason* v. *Connell,* 1 Whart. [Pa.] 381, and *Slemmer's Appeal,* 58 Pa. 155 [98 Am. Dec. 248]. There may be cases in which equity would enjoin a dissolution for a time, when the circumstances were such as to make it specially injurious; but no question of equitable restraint arises here. When one partner becomes dissatisfied, there is commonly no legal policy to be subserved by compelling a continuance of the relation, and the fact that a contract will be broken by the dissolution is no argument against the right to dissolve. Most contracts may be broken at pleasure, subject, however, to responsibility in damages. And that responsibility would exist in breaking a contract of partnership as in other cases."

This language would seem to justify the decree that was made.

It should be affirmed, with costs, and the case remanded for further proceedings.